1  RAJ N. SHAH
   raj.shah@dlapiper.com
2  ROGER L. LONGTIN
   roger.longtin@dlapiper.com
3  (Admitted *Pro Hac Vice*)
   DLA PIPER LLP (US)
4  203 North LaSalle Street, Suite 1900
   Chicago, Illinois 60601-1293
5  Tel: 312.368.4000
   Fax: 312.251.5714
6
   TODD M. NOONAN (SBN 172962)
7  todd.noonan@dlapiper.com
   DLA PIPER LLP (US)
8  400 Capitol Mall, Suite 400
   Sacramento, California 95814-4428
9  Tel: 916.930.3206
   Fax: 916.403.1651
10
   Attorneys for Defendant
11 GRO-WELL BRANDS, INC.

12                    UNITED STATES DISTRICT COURT

13                    EASTERN DISTRICT OF CALIFORNIA

14

15

16 GLENN McMILLAN, individually, and on    CASE NO. 1:15-CV-00695-KJM-SMS
   behalf of all others similarly situated,
17                                          **NOTICE OF MOTION AND MOTION TO**
                  Plaintiff,                **DISMISS COMPLAINT BY DEFENDANT**
18                                          **GRO-WELL BRANDS, INC.;**
   v.                                       **MEMORANDUM OF POINTS AND**
19                                          **AUTHORITIES**
   LOWE'S HOME CENTERS, LLC, a
20 North Carolina limited liability company, **(FEDERAL RULES OF CIVIL**
   HARVEST POWER, INC., a Delaware          **PROCEDURE 12(b)(1) AND 12(b)(6))**
21 corporation, and GRO-WELL BRANDS,
   INC., a Delaware corporation,            Date:       December 18, 2015
22                                          Time:       10:00 A.M.
                  Defendants.               Courtroom: 3
23                                          Judge:      Honorable Kimberly J. Mueller

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

**PLEASE TAKE NOTICE THAT** on **December 18, 2015 at 10:00 a.m.**, or as soon

4

thereafter as this matter may be heard before the Honorable Kimberly J. Mueller in the United

5

States Courthouse, Ronald T. Matsui Federal Courthouse, 501 I Street, Sacramento, California in

6

Courtroom 3, Defendant Gro-Well Brands, Inc. ("Defendant") will and hereby does move to

7

dismiss the Complaint of Plaintiff Glenn McMillan, and each claim asserted therein under FRCP

8

12(b)(1) and 12(b)(6). Defendant will and hereby does move to dismiss the Complaint on the

9

grounds that:

10

1.       Plaintiff has failed to state a claim because he does not allege facts that establish a

11

violation of the standards and regulations adopted under the California Fair Packaging and

12

Labeling Act and National Institute of Standards and Technology Handbook 133, which govern

13

Gro-Well's "2 CU FT" label on Premium Mulch;

14

2.       Mr. McMillan's allegations regarding the project area chart on Premium Mulch

15

bags fail to state statutory and common law fraud claims because they do not support an inference

16

of Gro-Well's intent, nor of Mr. McMillan's reliance on the project area chart;

17

3.       The unjust enrichment count fails to state an independent claim;

18

4.       Mr. McMillan lacks Article III standing to assert claims for an injunction because

19

there is no imminent threat that he will be harmed by future purchases of Premium Mulch; and

20

5.       The Court should abstain from hearing the claims based on the "2 CU FT" label on

21

Premium Mulch, which are subject to State Regulations that are a more effective means of redress

22

and will avoid placing unnecessary burdens on the Court.

23

Pursuant to the Court's Standing Order, counsel for the parties did engage in a pre-filing

24

meet and confer to discuss the substance of the contemplated motion.

25

Defendant's Motion to Dismiss is based on this Notice of Motion and Motion, the

26

supporting Memorandum of Points and Authorities, all pleadings and papers on file in this case,

27

the arguments of counsel, and on such other and further matters as the Court may consider.

28

1

2   Dated: July 27, 2015                    Respectfully submitted,

3

4                                           **DLA PIPER LLP (US)**

5                                           By: ____/s/ Todd M. Noonan_____
                                                    TODD M. NOONAN
6
                                            Attorney for Defendant
7                                           GRO-WELL BRANDS, INC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  RAJ N. SHAH
   raj.shah@dlapiper.com
2  ROGER L. LONGTIN
   roger.longtin@dlapiper.com
3  (Admitted *Pro Hac Vice*)
   DLA PIPER LLP (US)
4  203 North LaSalle Street, Suite 1900
   Chicago, Illinois 60601-1293
5  Tel: 312.368.4000
   Fax: 312.251.5714
6
   TODD M. NOONAN (SBN 172962)
7  todd.noonan@dlapiper.com
   DLA PIPER LLP (US)
8  400 Capitol Mall, Suite 400
   Sacramento, California 95814-4428
9  Tel: 916.930.3206
   Fax: 916.403.1651
10
   Attorneys for Defendant
11 GRO-WELL BRANDS, INC.

12

                    UNITED STATES DISTRICT COURT
13
                    EASTERN DISTRICT OF CALIFORNIA
14

15 GLENN McMILLAN, individually, and on       CASE NO. 1:15-CV-00695-KJM-SMS
   behalf of all others similarly situated,
16                                            **MEMORANDUM OF POINTS AND**
                    Plaintiff,                **AUTHORITIES IN SUPPORT OF**
17                                            **DEFENDANT GRO-WELL BRANDS,**
   v.                                         **INC.'S MOTION TO DISMISS**
18                                            **COMPLAINT**
   LOWE'S HOME CENTERS, LLC, a
19 North Carolina limited liability company,  **(FEDERAL RULES OF CIVIL**
   HARVEST POWER, INC., a Delaware            **PROCEDURE 12(b)(1) AND 12(b)(6))**
20 corporation, and GRO-WELL BRANDS,
   INC., a Delaware corporation,              Date:        December 18, 2015
21                                            Time:        10:00 A.M.
                    Defendants.               Courtroom: 3
22                                            Judge:       Honorable Kimberly J. Mueller

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ....................................................................................................... 2

    A.   Procedural Posture. ......................................................................................... 2

    B.   Summary of the Complaint. ............................................................................. 2

    C.   Summary of California Fair Packaging and Labeling Act Standards and Regulations. ..................................................................................................... 3

III.   MR. MCMILLAN FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ........................................................................................................ 5

    A.   Legal Standard for a Rule 12(b)(6) Motion to Dismiss. .................................. 6

    B.   Plaintiff Has Failed To State A Claim Because He Has Not Pleaded An Actionable Violation by Gro-Well Of The California Fair Packaging and Labeling Act. .................................................................................................... 6

    C.   Mr. McMillan's Statutory and Common Law Fraud Claims Should Be Dismissed. ....................................................................................................... 8

    D.   The Unjust Enrichment Claim Should Be Dismissed for the Same Reasons as Above. ...................................................................................................... 10

IV.   PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION FOR FAILURE TO ESTABLISH ARTICLE III STANDING ................................................................. 11

    A.   Legal Standard for Rule 12(b)(1) Motion to Dismiss. ................................... 11

    B.   Plaintiff Fails to Establish Article III Standing for Injunctive Relief. ................ 11

V.   ALTERNATIVELY, THIS COURT SHOULD EQUITABLY ABSTAIN FROM DECIDING THE "2 CU FT" CLAIMS. .................................................................. 13

VI.   CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*3W s.a.m. tout bois v. Rocklin Forest Prods., Inc.,*
   2011 WL 489735 (E.D. Cal. Feb. 7, 2011) ........................................................................ 10

*Acosta v. Brown,*
   213 Cal.App.4th 234 (Cal. Ct. App. 2013) ...................................................................... 14

*Alvarado v. Selma Convalescent Hosp.,*
   153 Cal.App.4th 1292 (Cal. Ct. App. 2007) .................................................................... 14

*Alvarez v. Chevron Corp.,*
   656 F.3d 925 (9th Cir. 2011)...................................................................................... 7, 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................................... 6

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
   459 U.S. 519 (1983) .................................................................................................... 6

*Balistreri v. Pacifica Police Dep't.,*
   901 F.2d 696 (9th Cir. 1988)......................................................................................... 6

*Bird v. First Alert, Inc.,*
   2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) ................................................................ 12

*Cattie v. Wal–Mart Stores, Inc.,*
   504 F.Supp.2d 939 (S.D. Cal. 2007) ...................................................................... 11, 13

*Crusader Ins. Co. v. Scottsdale Ins. Co.,*
   54 Cal.App.4th 121 (Cal. Ct. App. 1997) ...................................................................... 14

*Delarosa v. Boiron, Inc.,*
   2012 WL 8716658 (C.D. Cal. Dec. 28, 2012) ................................................................ 12

*Ebner v. Fresh Inc.,*
   2013 WL 9760035 (C.D. Cal. Sept. 11, 2013)................................................................... 7

*Fidelity Fin. Corp. v. Fed. Home Loan Bank,*
   792 F.2d 1432 (9th Cir. 1986)........................................................................................ 6

*Gest v. Bradbury,*
   443 F. 3d 1177 (9th Cir. 2006)............................................................................... 11, 13

*Hodgers-Durgin v. de la Vina,*
   199 F.3d 1037 (9th Cir. 1999)................................................................................. 11,12

DEFENDANT'S MPA ISO MOTION TO DISMISS COMPLAINT
CASE NO. 1:15-CV-00695-KJM-SMS

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*In re Aqua Dots Prods. Liab. Litig.*,

4

    654 F.3d 748 (7th Cir. 2011).........................................................................15, 16

5

*In re U.S. Aggregate Sec. Litig.*,

    235 F. Supp. 2d 1063 (N.D. Cal. 2002) ............................................................ 6

6

*Kingman Reef Atoll Investments, L.L.C. v. United States*,

7

    541 F.3d 1189 (9th Cir. 2008)......................................................................... 11

8

*Kizer v. County of San Mateo*,

    53 Cal.3d 139 (1991) ...................................................................................... 11

9

*Klein v. Chevron U.S.A., Inc.*,

10

    202 Cal.App.4th 1342 (Cal. Ct. App. 2012) .............................................13, 14

11

*Koehler v. Litehouse, Inc.*,

12

    2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ............................................... 13

13

*Lee v. American Nat. Ins. Co.*,

    260 F.3d 997 (9th Cir. 2001)........................................................................... 12

14

*Lewis v. Cont'l Bank Corp.*,

15

    494 U.S. 472 (1990) ........................................................................................ 11

16

*Lopez v. Nissan N. Am., Inc.*,

17

    201 Cal.App.4th 572 (Cal. Ct. App. 2011) ...................................................... 7

18

*Luman v. Theismann*,

19

    2014 WL 443960 (E.D. Cal. Feb. 4, 2014) ...............................................12, 13

20

*Mason v. Nature's Innovation, Inc.*,

    2013 WL 1969957 (S.D. Cal. May 13, 2013) ................................................ 12

21

*McKinnis v. Kellogg USA*,

22

    2007 WL 4766060 (C.D. Cal Sept. 19, 2007)................................................ 10

23

*McKinnis v. Sunny Delight Beverages Co.*,

    2007 WL 4766525 (C.D. Cal. Sept. 4, 2007).................................................. 11

24

*Rahman v. Mott's LLP*,

25

    2014 WL 325241 (N.D. Cal. Jan. 29, 2014) ................................................... 12

26

*Ross v. Sioux Honey Ass'n, Coop.*,

27

    2013 WL 146367 (N.D. Cal. Jan. 14, 2013) ..................................................... 9

28

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*,
965 F. Supp. 2d 1141 (E.D. Cal. 2013)...................................................................... 9

*Shamsian v. Dep't of Conservation*,
136 Cal.App.4th 621 (Cal. Ct. App. 2006) .............................................................. 16

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)................................................................................... 6, 8

*Wadhwa v. Aurora Loan Servs., LLC*,
2012 WL 762020 (E.D. Cal. Mar. 8, 2012) ............................................................. 10

*Wang v. OCZ Tech. Grp., Inc.*,
276 F.R.D. 618 (N.D. Cal. 2011) ............................................................................ 12

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) ................................................................................... 6

*Williamson v. Apple, Inc.*,
2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ........................................................... 9

*Winans v. Emeritus Corp.*,
2014 WL 970177 (N.D. Cal. Mar. 5, 2014) ............................................................ 14

## STATUTES AND REGULATIONS

Cal. Bus. & Prof. Code § 1770 ................................................................................... 3

Cal. Bus. & Prof. Code § 12012.1 ............................................................................. 4

Cal. Bus. & Prof. Code § 12101 ................................................................................ 4

Cal. Bus. & Prof. Code § 12103.5 ............................................................................. 4

Cal. Bus. & Prof. Code § 12211 ................................................................................ 4

Cal. Bus. & Prof. Code § 12601 ................................................................................ 4

Cal. Bus. & Prof. Code § 12602 ................................................................................ 3

Cal. Bus. & Prof. Code § 12603 ............................................................................. 3, 6

Cal. Bus. & Prof. Code § 12607 ........................................................................... 4, 15

Cal. Bus. & Prof. Code § 12609 ............................................................................. 3, 6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Cal. Bus. & Prof. Code § 17200, *et seq.* ........................................................ 3

Cal. Bus. & Prof. Code § 17500, *et seq.* ........................................................ 3

Cal. Code Regs. tit. 4 § 4600 ...................................................................... 4, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9 ...................................................................................... 9

Fed. R. Civ. P. 12 ................................................................................ 6, 11

NIST Handbook 130, "Uniform Laws and Regulations in the Areas of Legal Metrology
    and Engine Fuel Quality" .................................................................... 3

NIST Handbook 133, "Checking the Net Contents of Packaged Goods." ................ 1, 4-8, 15

NIST Handbook 155, "Weights and Measures Program Requirements" ...................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Glen McMillan's Class Action Complaint ("Complaint") alleges that Gro-Well Brands, Inc. ("Gro-Well") short-packed "2 CU FT" bags of Premium Mulch that Mr. McMillan purchased from a Lowe's Home Centers, LLC ("Lowe's) in Bakersfield, California. Mr. McMillan's generic short-packing allegations are barred by a "safe harbor" under California law. The "2 CU FT" label is required by the California Fair Packaging and Labeling Act ("CFPLA") and has a specific meaning defined by the standards in National Institute of Standards and Technology ("NIST") Handbook 133, "Checking the Net Contents of Packaged Goods." As set forth below, these standards dictate how Gro-Well must measure and pack mulch. Gro-Well is entitled to use the "2 CU FT" label consistent with the CFPLA and NIST standards. Mr. McMillan's Complaint is silent when it comes to alleging facts that Gro-Well violated these standards. He also does not allege that he used CFPLA or NIST standards and procedures in making his measurements and drawing his conclusions of short-packing or that he is qualified to do so under the framework established by the CFPLA. As a result, he does not plead a plausible claim.

But even if Mr. McMillan could amend the Complaint to state a violation of the CFPLA—and he cannot—his claims for injunctive relief are barred under California law. Mr. McMillan lacks Article III standing to bring claims for prospective injunctive relief because there is no threat of immediate actual or threatened harm.

Alternatively, the Court should exercise its discretion and abstain from hearing the case. The uniformity in the CFPLA and NIST standards is intended for the benefit of both consumers and suppliers. The CFPLA sets forth specific and complex administrative procedures, the enforcement of which are dependent upon qualified inspectors measuring and inspecting bags of mulch and detecting and policing potential violations. These powers have been bestowed upon county and licensed state sealers and are enforced by the California Department of Food and Agriculture ("Department"). The Court can abstain from hearing the case if the law is more efficiently administered and enforced by systematic and uniform testing by qualified and neutral individuals rather than at the behest of consumers who are ill-positioned to correctly measure

mulch content. Consumers like Mr. McMillan are free to report violations to the Department although he does not allege that he pursued this route. Under these circumstances, this Court may abstain from assuming the Department's role in enforcing the CFPLA and NIST standards. In sum, Mr. McMillan's claims should not be permitted to proceed.

## II.  BACKGROUND

### A.  Procedural Posture.

This is Mr. McMillan's second attempt to assert his claims against Gro-Well. Previously, Mr. McMillan and one other plaintiff filed a nearly identical complaint against Lowe's, Gro-Well, and two other suppliers of Premium Mulch, styled Joseph, *et al.* v. Lowe's Home Centers, LLC, *et al.*, No. 14-cv-03866 (N.D. Ill.) ("Joseph"). Mr. McMillan was forced to voluntarily dismiss his claims in that action because the court lacked personal jurisdiction over Gro-Well, which does not sell Premium Mulch in Illinois. (*See* Joseph Dkt. No. 93 at 11 n.5.) The Illinois plaintiff's claims against the third supplier remain pending.

In the instant action, Mr. McMillan has agreed to dismiss defendant Harvest Power, Inc. ("Harvest") because it turned out that, contrary to the allegations in the Complaint, he could not have purchased a bag of mulch from Harvest from the Bakersfield Lowe's store because Harvest never supplied mulch to that store. The parties will file a Rule 41 stipulated dismissal and, as a result, Harvest will no longer be a defendant.

### B.  Summary of the Complaint.

Premium Mulch is a Lowe's product (Comp. ¶ 12) manufactured for Lowe's by multiple companies throughout the United States. On April 13, 2014, Mr. McMillan claims he visited a Bakersfield, California Lowe's location and purchased bags of Premium Mulch allegedly supplied by Defendant Gro-Well. (Id. at ¶¶ 33, 35.) The number, intended use, and actual use of these bags is not stated. (*See generally* id. at ¶¶ 1-53.) Instead, Mr. McMillan vaguely describes the graphics on the bags. (Id. at ¶¶ 32-36.) One graphic stated net content of "2 CU FT." (*See* id. at ¶ 34.) The other graphics estimated the number of bags needed to cover a 48- or 50-squre foot area in two inches of mulch. (*See* id. ¶ 34.) There is no indication that Mr. McMillan had a 48- or 50-square foot project area needing coverage of two inches nor that he relied on such a representation in

1    making his purchase decision. (Id. ¶¶ 1-53.)

2            Ultimately, Mr. McMillan claims that his bags of Premium Mulch contained

3    "approximately" 1.5 cubic feet of mulch. (Id. ¶ 38.) How he arrived at this calculation is unstated

4    (*see generally* id. at ¶¶ 1-53), although the allegations suggest that Mr. McMillan used a non-NIST

5    "standard," *i.e.,* a space with dimensions of 41.57 by 41.57 by 2 inches, and drew his conclusion

6    of short-packing from this ad hoc "method" (*see* id. ¶ 28). The Complaint further states that

7    counsel hired a "private investigator" to test unidentified bags of Premium Mulch. (Id. at ¶ 43.)

8    The allegation, similar to the complaint pending in Illinois, states that the private investigator

9    purchased an unspecified number of bags from three unknown Lowe's stores in unidentified states

10   from unspecified suppliers. (Id.; Joseph ECF No. 102 ¶ 53.) These allegations do not state how the

11   "investigator" measured the mulch, nor his or her qualifications to conduct such measurements.

12   (*See generally* Comp. at ¶¶ 1-53.) More precisely, Mr. McMillan does not allege that he or his

13   private investigator conducted testing in accordance with the CFPLA or NIST standards.

14           Based on unspecified tests and procedures involving unknown numbers of Gro-Well bags,

15   Mr. McMillan concludes that Gro-Well duped him and other consumers into buying short-packed

16   Premium Mulch. (*E.g.*, id. at ¶¶ 40, 44.) Without identifying any locations other than California

17   where Gro-Well supplies Premium Mulch, Mr. McMillan also seeks to serve as a representative

18   for a nationwide class of Premium Mulch purchasers and requests equitable relief in the form of an

19   injunction and restitution under various statutory and common law theories: the Consumer Legal

20   Remedies Act ("CLRA"), Cal. Bus. & Prof. Code § 1770(a)(5) and (9) (Count I); the Unfair

21   Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* and False Advertising Law

22   ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, (Counts II and III); the consumer fraud laws of

23   50 states and California common law fraud (Counts IV and V); and unjust enrichment (Count VI).

24       **C.    Summary of California Fair Packaging and Labeling Act Standards and
                  Regulations.**

25           The allegations in Mr. McMillan's Complaint must be examined in light of the CFPLA.

26   Under the CFPLA, each Premium Mulch bag must be labeled with a net content. *E.g.* Cal. Bus. &

27   Prof. Code §§ 12602, 12603, and 12609 (adopting NIST Handbook 130, "Uniform Laws and

28

                                                    3

Regulations in the Areas of Legal Metrology and Engine Fuel Quality"). The law expressly "protect[s] purchasers . . . against deception or misrepresentation." Cal. Bus. & Prof. Code § 12601. The Department and sealers,[1] acting with the District Attorneys, can obtain a variety of relief on behalf of consumers, including obtaining injunctions, Cal. Bus. & Prof. Code § 12012.1, or ordering non-compliant product off-sale before it ever reaches the hands of consumers, *e.g.,* Cal. Bus. & Prof. Code § 12607.

In California, the Secretary of Food and Agriculture ("Secretary") administers and enforces the CFPLA. *E.g.* Cal. Bus. & Prof. Code § 12103.5 ("The duty of enforcing this division and carrying out its provisions and requirements is vested in the [Secretary] and in each sealer acting under the supervision and direction of the [Secretary].").[2] Indeed, the statutes impose an affirmative duty on the Department—and sealers operating under its direction—to "investigate conditions" in the sale of packaged goods and commodities. *See* Cal. Bus. & Prof. Code § 12101. As part of these duties, the Secretary and sealers must periodically test and measure the net contents of packages to validate accuracy. Cal. Bus. & Prof. Code § 12211.

Evaluating whether sufficient quantities of mulch are packed into a "2 CU FT" bag is not determined by a customer simply opening a bag and conducting an *ad hoc* calculation. "Sampling and testing procedures for determining the net contents of packaged commodities shall conform to the latest requirements set forth in" NIST Handbook 133. Cal. Code Regs. tit. 4 § 4600. Handbook 133 lays out complex and detailed procedures for calculating mulch volume. For example, the Handbook makes recommendations for testing at both the "point-of-pack" and the retail store. Handbook 133 at 1. Further, the procedures require the inspector to determine an appropriate "inspection lot." The inspection lot and a sampling plan must be structured so as to ensure a statistically meaningful average to account for "unavoidable variations in weighing, measuring, or counting the contents of individual packages that occur in current good manufacturing practice."

---

[1] A sealer is a person licensed by the Secretary and appointed to the office of county sealer, deputy sealer, or inspector. *See* Cal. Bus. & Prof. Code § 12203.

[2] *See also* Cal. Bus. & Prof. Code §§ 12012.1 (Secretary may bring suit to enjoin violations); 12027 (Secretary may adopt rules and regulations); 12107 (Secretary may establish tolerances and specifications consistent with NIST Handbook 44, "Specifications, Tolerances, and other Technical Requirements for Weighing and Measuring Devices")).

*Id.* at 2-5, 14. In the end, compliance does not require each bag to be filled as labeled if variations are within a specified range (the "MAV" or maximum allowable variance) and the average fill is equivalent to or greater than the labeled content. *See id.* These standards and procedures recognize that the nature of mulch is such that variations in the bags' contents are unavoidable and inevitable. Accordingly, California has adopted rules and regulations that balance consumers' interests in uniformity with what is reasonably achievable by suppliers of a non-standard sized product like mulch.

Handbook 133 contains additional, specific instructions for measuring mulch labeled by volume. *See* id. at 53-55. For example, testing must be done in containers described in the Handbook (*e.g.*, for a bag labeled "2 CU FT," a box with dimensions of either 12 by 12 by 27 inches or 16 by 9 by 27 inches). *Id.* at 54. There are also warnings not to rock, shake, drop, or tamp the testing sample. *Id.* at 55. In fact, the Handbook notes that mulch is "susceptible to clumping and compacting," and may require pre-testing "steps to ensure that the material is loose and free flowing" in order to obtain a fair and accurate measurement. *Id.* at 55.

Ultimately, neutral and uniform administration and enforcement of these standards is critical. As NIST has stated, "the weights and measures inspector is an independent and objective third party to see that the interests of *both* the *buyer* and the *seller* are safeguarded." NIST Handbook 155, "Weights and Measures Program Requirements" at 8 (emphasis added).

## III.   MR. MCMILLAN FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Suppliers required by the CFPLA to label their products' net contents must be able to rely on the weights and measures regulations applicable to net contents (including NIST Handbook 133, where applicable like in California). Without statewide uniformity, chaos would ensue for suppliers and consumers alike. Suppliers in California would be left to their own devices in calculating "2 CU FT" and consumers would not know if "2 CU FT" from one supplier was calculated differently from that of another. In other words, California consumers and suppliers alike have a shared interest in establishing and enforcing a uniform meaning of "2 CU FT." To state a claim, therefore, Mr. McMillan should be required to plead facts and details consistent with

the CFPLA. Instead, he simply alleges that unidentified Premium Mulch bags "contained approximately 1.50 cubic feet of mulch" (Comp. ¶ 38) without noting the required standards of measurement. The allegations fail to state a claim.

### A.   Legal Standard for a Rule 12(b)(6) Motion to Dismiss.

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) should be granted when the plaintiff can prove no set of facts that would entitle him to relief. *Fidelity Fin. Corp. v. Fed. Home Loan Bank*, 792 F.2d 1432, 1435 (9th Cir. 1986). Dismissal may be based on either a lack of cognizable legal theory or a lack of sufficient facts alleged under a cognizable legal theory. *See In re U.S. Aggregate Sec. Litig.*, 235 F. Supp. 2d 1063, 1068 (N.D. Cal. 2002); *see also Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). In deciding a motion to dismiss under Rule 12(b)(6), courts do not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Courts will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (the court is not bound to accept as true a legal conclusion couched as a factual allegation.). It is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the [] laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### B.   Plaintiff Has Failed To State A Claim Because He Has Not Pleaded An Actionable Violation by Gro-Well Of The California Fair Packaging and Labeling Act.

In recognition of the many factors that may impact the net contents of any bag of mulch, California (within the CFPLA) adopted the NIST standards applicable to mulch packaging. To protect consumers, each bag of mulch must be labeled by net content. *See* Cal. Bus. & Prof. Code §§ 12603, 12609. To promote uniformity (and to provide predictability to packagers), the accuracy of these mandatory net content labels must be tested by established processes. *See* Cal. Code Regs. tit. 4 § 4600; NIST Handbook 133 at 53-55. Together, compliance with these procedures provide

packagers, like Gro-Well, a "safe harbor" from generic short-packing actions brought under

consumer protection laws. *See, e.g. Ebner v. Fresh Inc.*, No. 13-00477, 2013 WL 9760035 (C.D.

Cal. Sept. 11, 2013) (dismissing CLRA, UCL, and FAL claims under the "safe harbor" of the

CFPLA's content labeling rules).

"'[C]ourts may not use the unfair competition law to condemn actions the Legislature

permits.'" *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011) (affirming dismissal of

UCL and CLRA claims) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973

P.2d 527, 542 (Cal. 1999)). This means that consumers cannot, through the consumer protection

laws, seek to supplant or augment the weights and measures rules and regulations in California.

*See Ebner*, 2013 WL 9760035, at *6 ("Because Defendant's labeling is permitted and required

conduct under state and federal law, it is entitled to safe harbor."); *Lopez v. Nissan N. Am., Inc.*,

201 Cal.App.4th 572, 595 (Cal. Ct. App. 2011) ("Like their UCL claims, plaintiffs' CLRA claim

fails because the odometers in question are 'correct'" under NIST standards.). Accordingly, a

plaintiff must state and prove a claim that the defendant violated or intentionally manipulated the

applicable NIST standards, not a standard devised by the plaintiff. *See Lopez*, 201 Cal.App.4th at

595 (granting summary judgment on claims seeking to impose standards more stringent than NIST

because the claim that the manufacturer intentionally manipulated the standard was unsupported).

Actions like this one must therefore be dismissed; a court cannot "impose [its] own notions of the

day as to what is fair or unfair." *See Alvarez*, 656 F.3d at 933 (internal quotations omitted).

Here, Mr. McMillan does not claim that Gro-Well violated the CFPLA or regulations

promulgated thereunder. He does not even plead facts that would justify a conclusion that the

contents of any one Gro-Well bag, much less a statistically significant number of bags, are short

packed under NIST measurements. Instead, Mr. McMillan simply alleges that he bought an

unknown quantity of mulch and later determined in an unspecified manner that the packages

contained "approximately 25% less than advertised." (Comp. ¶¶ 38.) This allegation falls far short

of a plausible assertion that Gro-Well violated the CFPLA under the testing required by Handbook

133. Far more is required—Mr. McMillan must identify, at a minimum, an inspection lot and

sampling plan with a statistically appropriate sample size; use of proper measuring devices; the

DEFENDANT'S MPA ISO MOTION TO DISMISS COMPLAINT
CASE NO. 1:15-CV-00695-KJM-SMS

1  number, identity, and volume of each bag; and his qualifications to act as a substitute for a state

2  licensed sealer. Mr. McMillan's ignorance of these standards and procedures is evident in his own

3  allegations where he relies on a non-NIST "standard" to describe two cubic feet of mulch as

4  covering a space with dimensions of 41.57 by 41.57 by 2 inches. (Comp. ¶ 28.) This measurement

5  standard, if one can call it that, is found nowhere in the CFPLA or NIST.

6       Without these facts and an understanding of proper measurement techniques, the law does

7  not permit Mr. McMillan to draw a conclusion that his bags of mulch were short-packed. Indeed,

8  even a single bag or multiple bags that fall short of "2 CU FT" volume would not lead to a

9  plausible claim because of allowable variances and the need to test a statistically sufficient sample

10  under California law before drawing a short-packing conclusion. The Court should not credit or

11  draw positive inferences from this "unwarranted deduction[] of fact, or unreasonable inference[]."

12  *See Sprewell*, 266 F.3d at 988. This is especially true here, where the sampling methodology and

13  sample size forming the basis of Mr. McMillan's conclusions are not alleged.

14       In short, Mr. McMillan has not alleged that Gro-Well violated the CFPLA, but rather that

15  his bags came up short under an unspecified measurement process (one not found in Handbook

16  133). Because Gro-Well must, under California law, package Premium Mulch with a net content

17  label, it is also entitled to have the veracity of that label tested pursuant to NIST Handbook 133.

18  *See Alvarez*, 656 F.3d at 934 ("[T]he California regulatory framework creates specific

19  requirements . . . that may not be trumped by the general prohibitions" of the consumer protection

20  statutes.) Gro-Well is entitled to rely on these protections and defend its measurements in

21  accordance with these standards before the Department, rather than defend against Mr.

22  McMillan's non-replicable testing and assertion that in his unqualified view, some number of bags

23  of mulch he purchased at a single store contained approximately 1.5 cubic feet of mulch. As

24  pleaded, Mr. McMillan's CLRA, UCL, and FAL claims are barred by this safe harbor and, for this

25  reason among others, should be dismissed.

26  **C.    Mr. McMillan's Statutory and Common Law Fraud Claims Should Be
           Dismissed.**

27

28  Mr. McMillan cannot sustain common law or statutory fraud claims based on Gro-Well's

alleged misrepresentation that four bags of mulch cover 50 square feet at a depth of two inches. Mr. McMillan's fraud claims are subject to the heightened pleading standards under Fed. R. Civ. P. 9(b). *Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*, 965 F. Supp. 2d 1141, 1149 (E.D. Cal. 2013) (dismissing a fraud claim under Fed. R. Civ. P. 9(b)). To state a claim for common law fraud, a complaint must allege specific facts showing that the defendant *knowingly* made a material misrepresentation with the *intent to deceive* and to induce a plaintiff's reliance, and that the plaintiff *justifiably relied* on the misrepresentation to his damage. *Id.* at 1151. To state claims under the CLRA, UCL, and FAL, a complaint must allege facts showing that a misstatement or false advertisement would be materially misleading to a "reasonable man," who would deem the statement's "existence or nonexistence" to be important "in determining his choice of action." *Ross v. Sioux Honey Ass'n, Coop.*, No. 12-C-1645, 2013 WL 146367, at *17 (N.D. Cal. Jan. 14, 2013) (dismissing CLRA, UCL, and FAL claims); *see also Williamson v. Apple, Inc.*, No. 11-cv-00377, 2012 WL 3835104, at *6 (N.D. Cal. Sept. 4, 2012) (same). Mr. McMillan's allegations do not meet the stringent pleading requirements under Rule 9(b).

Mr. McMillan alleges that because it is "mathematically impossible" to cover 50 square feet in two inches of mulch with four "2 CU FT" bags of mulch, a graphic on the bags of Premium Mulch is misleading. (Comp. ¶¶ 25-29, 110.) Mr. McMillan, however, admits that some of these graphics—which he viewed before purchasing the mulch—stated four bags cover "48" square feet (instead of 50 square feet) and that such coverage is in fact possible. (Id. ¶¶ 25-29). While Mr. McMillan avers that he would not have purchased the bags had he believed they contained less than "2 CU FT" of mulch, (s*ee, e.g.,* Comp. ¶¶ 40, 66, 80, 93, 106, 115-16, 126-27), nowhere does he allege facts showing, nor does he even aver, how he relied on the purported misrepresentation, let alone justifiably so. His fraud claim fails to plead justifiable reliance and intentional deceit.

*First*, Mr. McMillan fails to plead specific facts regarding the materiality of the four-bag estimate for 50 square feet, or his justifiable reliance on it. Mr. McMillan alleges neither the size of his intended project nor the number of bags he purchased, much less that he bought four bags to cover 50 square feet in two inches of mulch and was unable to do so. He does not assert that he purchased the bags of mulch in reliance on the 50-square foot estimate. Ultimately, his allegations

are inconsistent and self-defeating. In fact, Mr. McMillan admits seeing the 48-square foot graphic as well as the 50-square foot graphic before purchasing the Premium Mulch, with the latter being "mathematically impossible." (Comp. ¶¶ 25-29.) Under these circumstances, even if Mr. McMillan had relied on the coverage estimate (which he did not allege), he could not plausibly assert he "justifiably" relied on the mathematically impossible coverage estimate.

*Second*, Mr. McMillan's allegations defeat any suggestion of intentional deceit. Taking as true the allegation that Gro-Well estimated four bags would be necessary for the 50-square foot project, the alleged representation actually encourages customers to purchase FEWER rather than MORE bags of Premium Mulch. A consumer purchasing mulch based on the alleged misrepresentation (which Mr. McMillan did not) would purchase four bags to complete a 50-square foot project. If instead the same customer followed the 48-square foot guideline, that customer would have to purchase one extra bag (for a total of five) to cover 50 square feet. Quite simply, there is no plausible claim that Gro-Well intended to deceive customers for Gro-Well's benefit by allegedly presenting consumers with a graphic estimating that the customer use four bags to cover 50 square feet in two inches of mulch.

For these reasons, the allegations of fraud in the Complaint are unsustainable. Mr. McMillan failed to plead sufficient facts to show that the graphic recommending a purchase of four bags for a 50-square foot project would materially mislead the reasonable consumer (*i.e.* influenced them to spend more, rather than less, on Premium Mulch). This requires dismissal of the CLRA, UCL, and FAL claims based on the 50-square foot alleged misrepresentation. The common law fraud claim fails for lack of justifiable reliance and for the additional reason that there are no facts supporting an allegation of intentional deceit. Accordingly, these fraud-related claims against Gro-Well should be dismissed.

### D.   The Unjust Enrichment Claim Should Be Dismissed For the Same Reasons As Above.

Unjust enrichment is not an independent claim. *Wadhwa v. Aurora Loan Servs.*, LLC, No. 11-1784, 2012 WL 762020, at *7 (E.D. Cal. Mar. 8, 2012); *3W s.a.m. tout bois v. Rocklin Forest Prods., Inc.*, No. 10-cv-01070, 2011 WL 489735, at *5 (E.D. Cal. Feb. 7, 2011) ("[U]njust

1   enrichment is not recognized as a cause of action in the Eastern District of California."). Indeed,

2   the misconduct alleged in Count VI (i.e., that Defendant misled consumers about the quantity of

3   mulch in bags) is the same as in the other counts. If the Court dismisses Mr. McMillan's other

4   claims, his unjust enrichment claim must also be dismissed. *See McKinnis v. Kellogg USA*, No.

5   CV-07-2611 ABC(RCx), 2007 WL 4766060, at *6 (C.D. Cal Sept. 19, 2007); *McKinnis v. Sunny*

6   *Delight Beverages Co.*, No. CV-07-02034 RGK (JCx), 2007 WL 4766525, at *6 (C.D. Cal. Sept.

7   4, 2007).

8   **IV.   PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF MUST BE DISMISSED
        FOR LACK OF SUBJECT MATTER JURISDICTION FOR FAILURE TO
9       ESTABLISH ARTICLE III STANDING**

10      **A.   Legal Standard for Rule 12(b)(1) Motion to Dismiss.**

11          A litigant cannot invoke the subject matter jurisdiction of a federal court without Article III

12   "standing" to do so, *i.e.,* the litigant "must have suffered, or be threatened with, an actual injury

13   traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v.*

14   *Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). A federal court must dismiss an action upon

15   determining that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). "[W]hen subject

16   matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the

17   burden of proving jurisdiction in order to survive the motion." *Kingman Reef Atoll Investments,*

18   *L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008) (internal quotations omitted).

19      **B.   Plaintiff Fails to Establish Article III Standing for Injunctive Relief.**

20          Mr. McMillan cannot seek prospective injunctive relief because there is no threat of future

21   harm to him. Article III requires that a plaintiff seeking injunctive relief show he is "'realistically

22   threatened by a *repetition* of the violation.'" *Cattie v. Wal–Mart Stores, Inc.*, 504 F.Supp.2d 939,

23   951 (S.D. Cal. 2007) (quoting *Gest v. Bradbury*, 443 F. 3d 1177, 1181 (9th Cir. 2006) (original

24   emphasis)). Plaintiffs who are not entitled to seek injunctive relief themselves may not represent a

25   class seeking that relief. *Kizer v. County of San Mateo*, 53 Cal.3d 139 (1991). As the Ninth Circuit

26   has explained, "system-wide injunctive relief is not available based on alleged injuries to unnamed

27   members of a proposed class....Unless the named plaintiffs are themselves entitled to seek

28   injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*,

11

1    199 F.3d 1037, 1045 (9th Cir. 1999). Even if a plaintiff has standing to assert a claim in a

2    California state court, it is "not within [a Federal District] Court's authority to carve out an

3    exception to Article III's standing requirements to further the purpose of California consumer

4    protection laws." *Mason v. Nature's Innovation, Inc.*, No. 12-cv-3019 BTM (DHB), 2013 WL

5    1969957, at *5 (S.D. Cal. May 13, 2013); *see also Lee v. American Nat. Ins. Co.*, 260 F.3d 997,

6    1001-02 (9th Cir. 2001) ("[A] plaintiff whose cause of action is perfectly viable in state court

7    under state law may nonetheless be foreclosed from litigating the same cause of action in federal

8    court, if he cannot demonstrate the requisite injury.").

9         Numerous courts in California have dismissed consumer claims for injunctive relief

10   because the plaintiff did not allege an intent to purchase the product at issue again in the future.

11   *See, e.g., Luman v. Theismann*, No. 2:13-cv-00656 KJM (AC), 2014 WL 443960, at *7 (E.D. Cal.

12   Feb. 4, 2014) (Mueller, J.) (dismissing plaintiffs' CLRA claim for lack of Article III standing

13   where "Plaintiffs do not plead they continue to be misled by defendants' advertisements, nor do

14   they plead any facts indicating they are likely to be misled again."); *Rahman v. Mott's LLP*, No.

15   13–cv–3482–SI, 2014 WL 325241, at *10 & n.9 (N.D. Cal. Jan. 29, 2014) ("to establish standing,

16   plaintiff must allege that he intends to purchase the products at issue in the future."); *Mason v.*

17   *Nature's Innovation, Inc.*, 2013 WL 1969957 (S.D. Cal.) (dismissing injunctive relief claims

18   brought under UCL, CLRA and FAL because since the consumer knew of alleged wrong, there

19   was no risk consumer would again purchase product); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D.

20   618 (N.D. Cal. 2011) (no threat of future injury because plaintiff already purchased electronics

21   and did not allege he would purchase again); *see also Bird v. First Alert, Inc.*, No. C-14-3585 PJH

22   2014 WL 7248734, at *5 (N.D. Cal. Dec. 19, 2014) ("In particular, in a case involving a claim that

23   the product does not work or perform as advertised, where the plaintiff will clearly not purchase

24   the product again, courts have found no risk of future harm and no basis for prospective injunctive

25   relief."); *Delarosa v. Boiron, Inc.*, No. 10–1569, 2012 WL 8716658, at *5 (C.D. Cal. Dec. 28,

26   2012) (no threat of future injury because plaintiff would not purchase ineffective homeopathic

27   product again).[3]

28   _____

[3] Other California courts have held that a plaintiff need not demonstrate an intent to purchase the

12

As alleged and as a matter of law, Mr. McMillan cannot sustain a claim for prospective injunctive relief. He asks the Court to enjoin Gro-Well and order it to: (i) "institute procedures to ensure that each bag of Premium Mulch sold by Lowe's . . . will contain two (2) cubic feet of mulch"; (ii) correctly label bags in the future; and (iii) pay restitution. (See Comp. ¶ 68; id. at Count I (injunction), Counts II and III (restitution and injunction), Counts IV and V[4] (restitution, injunction, and unalleged damages) and Count VI (restitution).) Plaintiff does not allege that he intends to purchase bags of mulch in the future. Quite the contrary, McMillan is fully aware of the alleged false statements and he could not plausibly plead that armed with this knowledge, he is in real danger of repeated injury. His choices going forward are to boycott Gro-Well's product or, implausibly buy Gro-Well mulch believing that its volume is misstated. Speculation is not required as to which option he would choose—Mr. McMillan repeatedly stated in the Complaint that he would not purchase product he believes is short-packed. (See Compl. ¶¶ 40, 66, 67, 80, 81, 93, 94, 106, 115-116, 126, 127). In light of his allegations, the "probability" Mr. McMillan will be injured again by Gro-Well's alleged deception is "infinitesimal" and his requests for injunctive relief must be dismissed. *Luman*, 2014 WL 443960 at *7-8; *Cattie*, 504 F.Supp.2d at 951; and *Gest*, 443 F. 3d at 1181.

## V.     ALTERNATIVELY, THIS COURT SHOULD EQUITABLY ABSTAIN FROM DECIDING THE "2 CU FT" CLAIMS.

If the Court does not dismiss Mr. McMillan's Compliant, it should exercise its discretion and abstain. "As a general matter, a trial court may abstain from adjudicating a suit that seeks

---

product again to establish standing to pursue injunctive relief. *See, e.g., Koehler v. Litehouse, Inc.,* No. 12–cv–4055–SI, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012) ("To do otherwise would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief."). This rationale has expressly been rejected by the Eastern District of California in *Luman,* 2014 WL 443960 at *7-8 ("The court is not persuaded by the decisions of some district courts in this Circuit that have permitted consumer class action plaintiffs to pursue injunctive relief despite the lack of realistic threat of repeated harm."). Article III is a constitutional requirement for actions in federal court that must be enforced even if the alleged effect is to "eviscerate the intent of the California legislature in creating consumer protection statutes." *Id.* at *7. "[I]t is not within the court's authority to carve out an exception to Article III's standing requirements to further the purpose of California laws." *Id.* at *8 (citation omitted).

[4] Mr. McMillan asserts claims for "actual damages" in Counts IV and V, but does not allege anywhere in the Complaint what these damages might be other than restitution.

13

1    equitable remedies if granting the requested relief would require a trial court to assume the

2    functions of an administrative agency." *Klein v. Chevron U.S.A., Inc.*, 202 Cal.App.4th 1342, 1362

3    (Cal. Ct. App. 2012) (rejecting abstention argument where regulations had not yet been imposed).

4    More specifically, in California, there are two widely accepted reasons for a court to abstain:

5    either (i) the lawsuit implicates "complex economic policy" best handled by an administrative

6    agency; *or* (ii) granting relief would be "unnecessarily burdensome for the trial court to monitor

7    and enforce given the availability *of more effective means of redress*." *Winans v. Emeritus Corp.*,

8    No. 13-cv-03962, 2014 WL 970177, at *5 (N.D. Cal. Mar. 5, 2014) (emphasis added). In *Winans*,

9    for example, the court abstained because the agency could more effectively detect and police

10   potential violations of the law, reasoning that the "staff and resources [of the agency] presumably

11   dwarf[ed] that of any monitor the court could appoint." *Id.*, at *8. Similarly, the court in *Alvarado*

12   *v. Selma Convalescent Hosp.*, 153 Cal.App.4th 1292 (Cal. Ct. App. 2007), abstained after

13   determining that the agency was in a better position to make specific judgment calls under the

14   applicable regulations. Thus, abstention is particularly appropriate where regulatory enforcement

15   is more effective than court-supervised injunctions. *See Acosta v. Brown*, 213 Cal.App.4th 234,

16   253 (Cal. Ct. App. 2013) ("[A]ppellants *are* asking the court to interfere with and assume the

17   responsibilities of the DOL, and they have not shown that any remedy the court could provide

18   would be more effective.") (emphasis in original); *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54

19   Cal.App.4th 121, 138 (Cal. Ct. App. 1997) ("Institutional systems are . . . in place to deal with the

20   problem" raised in the complaint.)

21        Both of the traditional factors California courts rely upon in abstaining are present here: (i)

22   there exists a complex economic policy which balances customer and suppliers' economic

23   interests reflected in CFPLA and NIST standards that is best administered by the Department and

24   its qualified and neutral sealers; and (ii) monitoring injunctive relief would unduly burden the

25   Court given the remedies available to the Department.

26        Mr. McMillan seeks an order from the Court instituting procedures to measure two cubic

27   feet of mulch or requiring correct labeling in the future. (*See, e.g.,* Comp. ¶ 68). Remarkably, this

28   is merely duplicative of what already is in place. California has procedures to measure mulch

1   content and laws demanding correct labeling. These procedures and requirements are enforced by

2   the Department. There simply is no basis for the consumers to rely on the Court to usurp that role

3   when an agency with an army of resources and teams at its disposal already undertake the very

4   tasks requested by Mr. McMillan. The law (and the balance it seeks to strike) is more efficiently

5   administered and enforced by systematic and uniform testing conducted by sealers at the

6   Department. The CFPLA bestows authority on these neutral sealers to detect and police potential

7   short-packing violations. The sealers—who are specially licensed—are better positioned than

8   individual consumers to faithfully apply Handbook 133.

9       Indeed, the regulatory enforcement scheme under the CFPLA is far more efficient than

10  consumer actions for a variety of reasons. Individuals seeking to obtain and then enforce

11  injunctions in this area create unnecessary burdens on the Court's already strained docket. For

12  example, individuals seeking to enforce injunctions through contempt proceedings would

13  necessarily suffer from selection bias and the likelihood that individual consumers will spend the

14  time and money to purchase and test statistically significant lot sizes is slim. Yet that is precisely

15  what NIST Handbook 133 requires sealers to do in order to avoid penalizing unavoidable

16  variations that may arise despite good and acceptable manufacturing practices. Moreover, relying

17  on licensed sealers eliminates the need to qualify experts and obtain additional evidence during

18  mini-trials in post-injunction contempt proceedings. Finally, sealers are able to—and indeed

19  must—conduct point-of-pack and point-of-sale testing to ensure that errors (or violations) are

20  detected before product reaches the consumer. Unlike sealers, individual consumers lack the

21  resources and ability to test products at the point of packing and order them off-sale before they

22  reach the consumer or even leave the manufacturing facility, *e.g.* Cal. Bus. & Prof. Code § 12607.

23  Mr. McMillan's conduct in this regard demonstrates precisely why consumers are ill-suited to

24  seek and enforce injunctions. He failed to take an adequate sample of mulch and was unaware of

25  the proper measuring techniques and allowable variances yet leaped to a conclusion of systemic

26  short-packing.

27      There is little reason—beyond attorneys' fee and incentive awards—to duplicate the

28  existing regulatory framework, which is a far more effective mechanism in this situation. *Cf. In re*

15

*Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) (observing that the "high transaction costs" of class action litigation make some disputes better suited for alternative resolution). Under the circumstances, this Court should abstain from assuming the Department's role in enforcing the CFPLA and granting the equitable relief sought by Mr. McMillan.[5] *See Shamsian v. Dep't of Conservation*, 136 Cal.App.4th 621, 641 (Cal. Ct. App. 2006) ("It is well-established that a court of equity will abstain from employing the remedies available under the unfair competition law in appropriate cases" because "injunctions and restitution[] are equitable in nature.")

## VI.   CONCLUSION

For the reasons stated herein, Gro-Well respectfully requests that the Court grant this Motion and dismiss Mr. McMillan's Complaint with prejudice.

Dated: July 27, 2015

Respectfully submitted,

**DLA PIPER LLP (US)**

By:   /s/ Todd M. Noonan
     TODD M. NOONAN

Attorney for Defendant
GRO-WELL BRANDS, INC.

---

[5] Nor should this Court assume the role of sealer for mulch nationwide, as the Complaint would have it do. Not only does this implicate state sovereignty issues and ignore widespread variances in state laws, it would further multiply the efficiency and effectiveness concerns identified herein.

16