UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN McMILLAN, individually, and on behalf of all others similarly situated, | No. 1:15-cv-00695 DAD SMS[1] |
| Plaintiff, | ORDER |
| v. | |
| LOWE'S HOME CENTERS, LLC, and GRO-WELL BRANDS, INC., | |
| Defendants. | |

Plaintiff Glenn McMillan ("Mr. McMillan" or "plaintiff") filed this putative class action against defendants Lowe's Home Centers, LLC ("Lowe's") and Gro-Well Brands, Inc. ("Gro-Well" or "defendant"),[2] alleging that they misrepresented the quantity of mulch contained in the private-label Premium Mulch bags. This matter is before the court on Gro-Well's motion to dismiss plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and

---

[1] Judge Mueller heard the motion addressed by this order on January 29, 2016. ECF No. 55. The case was reassigned to the Honorable Judge Dale A. Drozd on February 18, 2016. ECF No. 57. Judge Mueller issues the following order because she heard the motion.

[2] Mr. McMillan initially also brought claims against manufacturer Harvest Power, Inc., but the court dismissed those claims pursuant to a joint stipulation on July 29, 2015. ECF No. 32.

the equitable abstention doctrine. Def.'s Mot. Dismiss, ECF No. 30 ("Mot."). Plaintiff opposes the motion. Pl.'s Opp'n Mot. Dismiss, ECF No. 41 ("Opp'n"). The court held a hearing on the matter on January 29, 2016, at which Eric Roberts and Todd Noonan appeared for defendant Gro-Well, and Meghan George appeared for Mr. McMillan. As explained below, the court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss.

I.     BACKGROUND

    A.     Factual Allegations and Claims

Mr. McMillan filed the complaint on May 6, 2015, making the following allegations. Compl., ECF No. 1. Premium Mulch is a private-label product retailed exclusively at Lowe's stores. *Id.* ¶ 12. Gro-Well manufactures, packages, distributes, and sells Premium Mulch to Lowe's under a contractual agreement. *Id.* ¶ 14. Lowe's "directs, controls, and participates in [the] manufacturing and packaging of the Premium Mulch." *Id.* ¶ 16. Lowe's developed the textual and graphic content on a standard, uniform bag, and Gro-Well prints the content and representations on the bags. *Id.* ¶ 22. At the direction and under the control of Lowe's, Gro-Well implements and utilizes a standard mechanized process for distributing a uniform amount of mulch in each bag. *Id.* ¶ 18. At all relevant times, Lowe's and Gro-Well both knew the actual uniform amount of mulch distributed in each bag. *Id.* ¶¶ 19–20.

The Premium Mulch bag labels are false and misleading because they represent that the "Net Contents" of each bag is "2 Cu. Ft.," *id.* ¶ 24, but the bags actually contain substantially less than two cubic feet of mulch, *id.* ¶¶ 3, 37. As a result, four bags do not cover forty-eight square feet at a depth of two inches, as represented on some of the labels, or fifty square feet at a depth of two inches, as represented on others. *Id.* ¶¶ 25–29. Moreover, it is mathematically impossible for four bags of two cubic feet of mulch to cover fifty square feet at a depth of two inches. *Id.* ¶ 29.

On April 13, 2014, Mr. McMillan purchased bags of Premium Mulch from a Lowe's retail store in Bakersfield, California; the bags were manufactured and packaged by Gro-Well. *Id.* ¶¶ 33–35. Mr. McMillan was injured as a result of defendants' misconduct, and would

1   not have purchased Premium Mulch had he known that the bags did not contain two cubic feet of
2   mulch. *Id.* ¶¶ 30–31.
3         Based on these allegations, the complaint asserts six causes of action: (1) violation
4   of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*;
5   (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200
6   *et seq.*; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code
7   §§ 17500 *et seq.*; (4) violation of the consumer fraud and deceptive trade practices acts of each of
8   the fifty states and the District of Columbia; (5) fraudulent misrepresentation; and (6) unjust
9   enrichment. *Id.* ¶¶ 54–131.
10        Defendant Lowe's filed a motion to dismiss on June 22, 2015, ECF No. 23, and
11  defendant Gro-Well filed a motion to dismiss on July 27, 2015, ECF No. 30.  Plaintiff opposed
12  both motions, ECF Nos. 36, 41, and defendants each replied, ECF Nos. 37, 48.  On January 20,
13  2016, the court denied Lowe's' motion to dismiss.  ECF No. 47.
14        In the motion to dismiss currently before the court, Gro-Well contends the
15  complaint fails to state a plausible claim, because it does not expressly reference the California
16  Fair Packaging and Labeling Act ("the CFPLA" or "the Act") or allege plaintiff measured the
17  mulch using standards and procedures consistent with the CFPLA.  Mot. at 6–8.  In addition, Gro-
18  Well argues the complaint fails to plead facts supporting the elements of justifiable reliance and
19  intent to deceive, *id.* at 8–10, fails to state a cognizable claim for unjust enrichment, *id.* at 10–11,
20  and fails to establish standing for the requested injunctive relief, *id.* at 11–13.  Alternatively, Gro-
21  Well asks the court to equitably abstain from adjudicating plaintiff's claims, because, it argues,
22  the provisions of the CFPLA are better enforced by state administrative agencies than by the
23  court.  *Id.* at 13–16.
24      B.    <u>CFPLA Standards and Regulations</u>
25        The CFPLA "is designed to protect purchasers of any commodity within its
26  provisions against deception or misrepresentation."  Cal. Bus. & Prof. Code § 12601.  The
27  California Business and Professions Code's Division of Weights and Measures ("Division 5"),
28  which includes the CFPLA, vests an affirmative duty in the Secretary of Food and Agriculture

3

("the Secretary") and its county inspectors, known as "sealers," to enforce Division 5. *See, e.g.*, Cal. Bus. & Prof. Code §§ 12103.5, 12200, 12211.

The CFPLA requires consumer packages to be labeled with a net quantity of contents. *Id.* §§ 12602, 12603(b). Based on her authority under the CFPLA, the Secretary promulgated regulations adopting by reference the latest federal requirements for verifying net quantity statements, as set forth in the National Institute of Standards and Technology ("NIST") Handbook 133, "Checking the Net Contents of Packaged Goods." Cal. Code Regs. tit. 4 § 4600; *see* Cal. Bus. & Prof. Code § 12609. Handbook 133 provides sampling and testing procedures to evaluate the accuracy of the declared net quantity statement for each "inspection lot," a collection of identically labeled packages available for inspection at one time. U.S. Dep't Commerce, NIST Handbook 133, Checking the Net Contents of Packaged Goods, at 6 (2016) ("Handbook 133"). Each inspection lot passes or fails as a whole based on the test results. *Id.* Handbook 133 has two requirements: an average requirement and an individual package requirement. *Id.* at 7. The average requirement provides that the average net quantity of contents of packages in an inspection lot must at least equal the net quantity statement. *Id.* The individual package requirement regulates the variations in content among individual packages in the inspection lot. *Id.* Individual packages generally may not be under-filled by more than the Maximum Allowable Variations ("MAV") specified for the type of package. *Id.* The MAV for packages of mulch labeled by volume is five percent. *Id*. at 120. In other words, out of every twelve packages of mulch measured, only one package may be under-filled by more than the five percent MAV. *Id.*

The CFPLA provides for several remedies and penalties. Whenever a packaged commodity is offered for sale in violation of the CFPLA, a sealer must "order the commodity off sale and require that a correct statement of net quantity be placed on the commodity before the same may be released by the sealer." Cal. Bus. & Prof. Code § 12607. In addition, the Secretary may bring a civil action to enjoin violation of the CFPLA. *Id.* § 12012.1. Violation of the CFPLA is a misdemeanor punishable by a fine of between $25 and $500, imprisonment in the county jail not to exceed six months, or both a fine and imprisonment. *Id.* § 12615.5. The

statutory remedies and penalties "are cumulative to each other and to the remedies or penalties available under all other laws of [California]." *Id.* § 12026.5.

II.     LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the court's subject matter jurisdiction. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). The Federal Rules of Civil Procedure provide, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted). Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss, this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Allegations of fraud are subject to a higher standard and must be pleaded with particularity. Fed. R. Civ. P. 9(b). To comply with Rule 9(b), allegations of fraud "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). This includes "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation marks and

citation omitted). The heightened pleading requirements of Rule 9(b) do not apply to allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b).

Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). A court's consideration of documents attached to a complaint, documents incorporated by reference in the complaint, or matters of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

III.   DISCUSSION

Gro-Well argues the court should equitably abstain from adjudicating plaintiff's claims, or in the alternative, should dismiss plaintiff's claims under Rules 12(b)(1) and 12(b)(6). The court first addresses plaintiff's standing to seek injunctive relief, and then turns to abstention and defendant's remaining arguments for dismissal.

   A.   Injunctive Relief

To have Article III standing, a plaintiff must show that

> (1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

6

> speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Gro-Well argues plaintiff has not established standing to seek injunctive relief, because he has not shown he faces a threat of similar injury in the future. Mot. at 11–13. This court has previously required that a plaintiff seeking injunctive relief show he is "realistically threatened by a *repetition* of the violation." *Luman v. Theismann*, No. 2:13-00656, 2014 WL 443960, at *7 (E.D. Cal. Feb. 4, 2014) (quoting *Cattie v. Wal–Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007)) (emphasis in original), *aff'd in part, rev'd in part on other grounds by Luman v. Theismann*, No. 14-15385, ___F. App'x___, 2016 WL 1393432 (9th Cir. Apr. 8, 2016) (unpublished). In *Luman*, this court dismissed a complaint because the plaintiffs did not plead they "continue[d] to be misled" by the defendants' advertisements or "any facts indicating they [were] likely to be misled again." *Id.* In reaching its decision, the court rejected the public-policy exception adopted by *Henderson v. Gruma Corp.*, No. 10–04173, 2011 WL 1362188, at *7–8 (C.D. Cal. Apr. 11, 2011), because it "does not square with Article III's [standing requirements]." *Luman*, 2014 WL 443960, at *7–8 (citation omitted). Here, as in *Luman*, the complaint does not allege Mr. McMillan continues to be misled by the misrepresentations or will likely be misled again. Accordingly, the court dismisses plaintiff's claim for injunctive relief.

B.      Abstention

The judicially-created equitable abstention doctrine gives courts discretion to abstain from deciding UCL claims and other claims for equitable relief. *See Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1297–98 (2007); *Winans by & through Moulton v. Emeritus Corp.*, No. 13-03962, 2014 WL 970177, at *4–5 (N.D. Cal. Mar. 5, 2014) (equitable abstention doctrine applies in federal court). A court may not equitably abstain from adjudicating legal claims. *See Shuts v. Covenant Holdco LLC*, 208 Cal. App. 4th 609, 625 (2012) (reversing application of abstention doctrine because trial court had no discretion to apply doctrine to plaintiffs' legal claims) (citing *Desert Healthcare Dist. v. PacifiCare FHP, Inc.*, 94 Cal. App. 4th 781, 795–96 (2001)); *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1085 (N.D. Cal.

2011).  Accordingly, the doctrine implicates the equitable remedies sought in connection with plaintiff's claims, but does not affect plaintiff's claims for money damages.

Equitable abstention may be appropriate if: (1) "granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency"; (2) resolving the claim requires "determining complex economic policy, which is best handled by the Legislature or an administrative agency"; or (3) "granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means of redress." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1362 (2012) (quoting *Arce v. Kaiser Found. Health Plan, Inc.*, 181 Cal. App. 4th 471, 496 (2010)).

Two California cases help illustrate these principles.  In *Alvarado*, a private party filed a UCL class action seeking an injunction requiring the owners and operators of more than twenty skilled nursing and/or intermediate care facilities to comply with a statutory provision setting forth the minimum number of nursing hours per patient.  153 Cal. App. 4th at 1295, 1303–04, 1306.  The court applied the equitable abstention doctrine for three reasons: (1) it found the Legislature had intended the Department of Health Care Services to enforce the provision; (2) adjudicating each facility's compliance with the provision would require the court to make a series of complex factual findings better accomplished by an administrative agency; and (3) granting the requested injunctive relief would require the court "to undertake a class-wide regulatory function and manage the long-term monitoring process to ensure compliance." *Id.* at 1304–06 (abstaining where plaintiff solely sought equitable remedies under the UCL).  In *Shamsian v. Department of Conservation*, 136 Cal. App. 4th 621 (2006), the court abstained from adjudicating a UCL claim brought to enforce compliance with the California Beverage Container Recycling and Litter Reduction Act, Cal. Pub. Res. Code §§ 14500 *et seq.*, because the act created a "comprehensive administrative scheme" designed to achieve its goals "through a complex arrangement of financial incentives." *Id.* at 626–27, 641–42 (affirming dismissal of claims brought under the act and abstaining from adjudicating remaining UCL claim, which solely sought equitable remedies).  The court found issuing restitution and disgorgement orders

8

would interfere with the Department of Conservation's administration of the Act and could "potentially risk throwing the entire complex economic arrangement out of balance." *Id.* at 642.

Here, plaintiff seeks restitution, an order enjoining defendants' allegedly illegal conduct, and an order requiring defendants to either institute procedures to ensure that each bag contains two cubic feet of mulch or to alter the product's packaging, advertising, and marketing to reflect the actual amount of mulch distributed in each bag. Compl. ¶¶ 68, 94, 107, 118, 131. At this stage of the proceedings, defendant has not shown the requested equitable relief would require the court to determine complex economic policy or would unnecessarily burden the court. Although the statute vests an affirmative duty to enforce its provisions in the Secretary of Food and Agriculture and county sealers, Cal. Bus. & Prof. Code § 12103.5, and the State of California recently brought an enforcement action against Gro-Well in state court,[3] Division 5 also states that the remedies or penalties it provides "are cumulative to each other and to the remedies or penalties available under all other laws of the state," *id.* § 12026.5. This language suggests that unlike in *Shamsian*, there is not a complex economic arrangement or legislated enforcement scheme that could be thrown out of balance through parallel private enforcement of the statutory regulations. *Cf. Shuts*, 208 Cal. App. 4th at 624 (statutory provision allowing cumulative remedies weighed against applying abstention). To the contrary, private enforcement of the CFPLA furthers its stated purpose of protecting consumers against deception or misrepresentations. *See* Cal. Bus. & Prof. Code § 12601.

Moreover, unlike in *Alvarado*, ensuring compliance with the CFPLA would not require the court to consider numerous complex variables. *See Alvarado*, 153 Cal. App. 4th at 1304–06 (abstaining where court would be required to make a series of complex factual findings,

---

[3] Gro-Well submitted a copy of the state court's order approving a joint stipulation for the entry of a monetary and injunctive order as an exhibit to its reply brief. *See* Dec. 10, 2015 Final Judgment, *People v. Gro-Well Brands, Inc.*, No. 15-1731, attached as Def.'s Ex. 1, ECF No. 48-1. The court takes judicial notice of this document, because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of proceedings and filings in California state court proceeding).

1   such as classifying various employees under the statute and determining on a class-wide basis the
2   size, configuration and licensing status of skilled nursing and intermediate care facilities).
3   Neither does it require the court to apply vague, judgment-laden standards or to make an
4   economic or policy judgment. *Compare id.*, *and Desert Healthcare*, 94 Cal. App. 4th at 795–96
5   (abstention was appropriate because adjudicating the claim would require the court to wade into
6   the legislative arena to determine the appropriate levels of capitation and oversight in the health
7   care finance industry), *with Shuts*, 208 Cal. App. 4th at 621–22 (abstention inappropriate because
8   new guidelines issued after *Alvarado* provided clearer guidance on how to calculate the minimum
9   required nursing hours per patient, guidance a court was competent to interpret and apply).  Here,
10  the CFPLA provides objective standards for verifying net quantity statements and sets forth the
11  Legislature's policy determinations regarding how much variation in content to allow among
12  individual packages.  Adjudicating plaintiff's claims requires the court merely to perform an
13  ordinary judicial function of determining whether defendants' business practices are unlawful
14  under the underlying statute.  Finally, the relief sought is limited to the two defendants in this
15  case.  Plaintiff is not asking the court to issue a network of injunctions across the state or to
16  engage in a long-term monitoring process. *See Arce*, 181 Cal. App. 4th at 500.
17          For these reasons, Gro-Well has not shown equitable abstention is appropriate at
18  this stage.
19          The court next considers Gro-Well's remaining arguments for dismissal.
20      C.      CFPLA "Safe Harbor"
21          As noted above, Gro-Well argues the court should dismiss the complaint because it
22  does not expressly reference the CFPLA or allege plaintiff measured the mulch using standards
23  and procedures consistent with the CFPLA. Mot. at 6–8. Courts have recognized a "safe harbor"
24  from liability under California consumer protection statutes when the defendant's conduct
25  complies with California's weights and measures rules and regulations. *See, e.g.*, *Alvarez v.*
26  *Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011) (finding defendants entitled to safe harbor from
27  liability under UCL and CLRA for retention of residual fuel because defendants' fuel dispenser
28  design was certified by California Department of Food and Agriculture's Division of

Measurement Standards).  Plaintiff responds that defendant's safe harbor argument is an affirmative defense that cannot be resolved at this stage given the disputed facts.  Opp'n at 8 (citing *Chand v. Burlington Coat Factory of Cal., LLC*, No. 13-2008, 2014 WL 726837, at *3–4 (E.D. Cal. Feb. 24, 2014)).  The Act's safe harbor provides protection only when a defendant actually complies with legislative labeling requirements.  The complaint here alleges defendant does not comply with the CFPLA, an allegation the court accepts as true.

The court finds Gro-Well has not shown plaintiff's claim should be dismissed under the safe harbor doctrine.  First, the cases cited by defendant treat the safe harbor doctrine as an affirmative defense, rather than as an affirmative pleading requirement.  *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (1999); *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 591 (2011) (resolving the issue on summary judgment).  At hearing, defendant conceded the safe harbor doctrine is an affirmative defense.  Accordingly, Mr. McMillan was not required to expressly plead in the complaint that the safe harbor doctrine does not apply.  *Cf. Jones v. Bock*, 549 U.S. 199, 211–12 (2007) (holding a plaintiff is not required to plead the absence of an affirmative defense in the complaint).  The heightened pleading requirements under Rule 9(b) merely require a plaintiff to allege the "who, what, when, where, and how" of the alleged fraud.  *Vess*, 317 F.3d at 1106.  Here, the complaint meets these requirements in alleging that Gro-Well (who) short-packed bags of mulch (what) sold at Lowe's in Bakersfield, California (where), the bags were purchased by plaintiff on April 13, 2014 (when), and each bag was packed with less mulch than advertised (how).

Second, unlike in the cases cited by defendant, it is not clear based on the face of the complaint that Gro-Well will prevail on its safe harbor defense.  *See* Mot. at 7 (citing, for example, *Alvarez*, 656 F.3d 925, and *Ebner v. Fresh Inc.*, No. 13-00477, 2013 WL 9760035 (C.D. Cal. Sept. 11, 2013), *aff'd*, No. 13-56644, ___F.3d___, 2016 WL 1056088 (9th Cir. Mar. 17, 2016)).  In *Cel-Tech Communications*, the first California Supreme Court decision to address the safe harbor under California's UCL, the court held, "[t]o forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct."  20 Cal. 4th at 183.  For example, the Ninth Circuit in *Ebner* affirmed the district court's dismissal

of a claim alleging the net quantity statement on a lip treatment product label was misleading, because the defendant complied with federal and state law requiring manufacturers to include an accurate net weight statement on the label. *Ebner*, 2016 WL 1056088, at *3. Because the statement was required by federal and state law, it could not form the basis of a false advertising claim. *Id.*

In contrast, the parties here dispute whether Gro-Well's conduct complies with the minimum standards of the CFPLA such that Gro-Well is entitled to the safe harbor. If the bags of Premium Mulch are systematically short-packed by twenty-five percent, as alleged in the complaint, Compl. ¶ 38, the bags violate the CFPLA. The CFPLA requires the average net quantity of contents to at least equal the labeled net quantity statement. *See* Handbook 133, at 6–7. The CFPLA allows some deviation from the labeled content to account for reasonable variations that may occur as a result of the packaging and distribution process, not to allow companies to intentionally under fill all of their packages by a certain amount. *See id.* at 6. Moreover, even if the alleged twenty-five percent variation was the result of deviations in filling, rather than a systematic short-packing scheme, Gro-Well still may violate the CFPLA, which allows only five percent MAV for mulch. *See id.* at 120. Finally, the court is not persuaded by defendant's argument that the allegation the bags contained twenty-five percent less mulch than advertised is a legal as opposed to a factual conclusion, which the court is not required to accept as true. Because it is not clear based on the face of the complaint that Gro-Well is entitled to the protection of the safe harbor under the CFPLA, dismissal under Rule 12(b) is not appropriate on that basis.

### D. Reliance and Intent

Gro-Well argues the complaint fails to plead facts supporting plaintiff's justifiable reliance on its alleged misrepresentations or intent to deceive. When claims are based on fraudulent or unlawful conduct, plaintiffs "must plead and prove actual reliance to satisfy the standing requirement" of the UCL and FAL. *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009); *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1385 (2010) (concluding that the reasoning of *Tobacco II* applies to the "unlawful" prong of the UCL when the predicate unlawful

conduct is misrepresentation). Reliance is established by pleading that "the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct" but for defendants' misrepresentations or omissions. *Tobacco II Cases*, 46 Cal. 4th at 326 (citation omitted). Plaintiffs are not required to plead that the fraudulent conduct was the only, predominant, or even decisive factor in influencing their conduct, but they must plead that it "played a substantial part, and so had been a substantial factor" in influencing their decision. *Id.* (citation omitted). A presumption of reliance arises if a reasonable person "would attach importance to its existence or nonexistence in determining [a] choice of action in the transaction in question." *Id.* at 327 (citation omitted).

The complaint alleges Mr. McMillan read the alleged misrepresentations on the labels and purchased the mulch in reliance on those misrepresentations. Compl. ¶¶ 30, 32, 34–36. It alleges he acted as a reasonable consumer, and would have declined to purchase the mulch at the proffered price had he known the bags contained substantially less than two cubic feet of mulch. *Id.* ¶¶ 66, 80, 93, 106, 115–16. This suffices to plead reliance. *See Tobacco II Cases*, 46 Cal. 4th at 326–27; *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1169 (C.D. Cal. 2011). Whether a reasonable consumer would in fact be deceived by the misrepresentations is generally a question of fact not appropriate for decision at this stage. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008); *see also Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007).

With respect to Gro-Well's intent to deceive, the court finds defendant's argument unpersuasive. Defendant argues it would be contrary to its self-interest to falsely represent that four bags cover fifty square feet, when they cover only forty-eight square feet, because it would encourage consumers to purchase fewer bags than they otherwise would to complete a fifty-square-foot project. Mot. at 10. Defendant ignores the possibility that a consumer who needed exactly fifty square feet of mulch would return to purchase an additional bag, or that the misrepresentation might lead more consumers overall, who require varying amounts of mulch, to choose defendant's product. Gro-Well's unsupported economic theory does not undermine the

plain allegations of the complaint, that defendant did intend to deceive consumers. The court rejects defendant's argument that plaintiff's fraud claims should be dismissed.

### E. Unjust Enrichment

In the court's January 20, 2016 Order Denying Lowe's' Motion to Dismiss, the court held the complaint states a claim for unjust enrichment under *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015). ECF No. 47 at 11–12. In *Astiana*, the Ninth Circuit interpreted California law and held that while "there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution . . . . [w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." 783 F.3d at 762 (quotation marks and citations omitted); *see Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014). The *Astiana* court also held that courts should not dismiss a quasi-contract claim seeking restitution as duplicative or superfluous of other claims. 783 F.3d at 762–73 (citing Fed. R. Civ. P. 8(d)(2), which allows a party to plead claims in the alternative).

Here, Gro-Well asserts the same arguments that Lowe's previously advanced, that unjust enrichment is not an independent claim and is duplicative of other causes of action. Mot. at 10–11. The court again rejects these arguments based on *Astiana*. The complaint alleges Mr. McMillan purchased Premium Mulch in reliance on defendants' false and misleading statements, Compl. ¶ 127, and "[u]nder the principles of equity, Defendants should not be allowed to keep the money [they unjustly received]," *id.* at 130. *See generally id.* ¶¶ 120–31. Under *Astiana*, these allegations are sufficient to state a quasi-contract claim seeking restitution. *See* 783 F.3d at 762. Gro-Well's motion to dismiss is denied as to plaintiff's unjust enrichment claim.

### F. Leave to Amend

Having dismissed plaintiff's claim for injunctive relief for a failure to establish standing as to that claim, the court considers whether plaintiff should be granted leave to amend. Federal Rule of Civil Procedure 15(a)(2) states "[t]he court should freely give leave [to amend its pleading] when justice so requires" and the Ninth Circuit has "stressed Rule 15's policy of

14

favoring amendments," *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "In exercising its discretion [regarding granting or denying leave to amend] 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).  However, "liberality in granting leave to amend is subject to several limitations . . . . includ[ing] undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011).  Here, Mr. McMillan's declaration suggests he may be able to plead facts establishing standing. *See* ECF No. 41-1.  Because granting leave to amend would not be futile, cause undue prejudice, or create undue delay, the court grants plaintiff leave to amend his claim for injunctive relief. *See Cafasso*, 637 F.3d at 1058.

IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Gro-Well's motion to dismiss plaintiff's claim for injunctive relief with leave to amend and DENIES Gro-Well's motion in all other respects.  An amended complaint shall be filed within fourteen (14) days of the date this order is filed.

IT IS SO ORDERED.

DATED: May 3, 2016.

_____
UNITED STATES DISTRICT JUDGE